**In Re: Nominating Petition of R. Seth WILLIAMS, Candidate for Philadelphia District Attorney in the May 2009 Democratic Primary**

**Appeal of: R. Seth Williams.**

Commonwealth Court of Pennsylvania.

Argued April 8, 2009.

Decided April 15, 2009.

Samuel C. Stretton, West Chester, for appellant.

George Bochetto, Philadelphia, for appellees.

BEFORE: LEADBETTER, President Judge, SMITH–RIBNER and BUTLER, Judges.

OPINION BY Judge SMITH–RIBNER.

█ R. Seth Williams, a candidate for the Office of Philadelphia District Attorney in the May 2009 Democratic Primary Election, has appealed to this Court from the March 27, 2009 order of the Court of Common Pleas of Philadelphia County that granted objections filed by John O'Rourke and Jason Stein (Objectors) to Williams' nominating petition and ordered the Philadelphia County Board of Elections not to place Williams' name on the primary ballot. After oral argument in this matter, the Court entered a per curiam order on April 8, 2009 sustaining the appeal of Williams and directing that his name be placed on the primary ballot. This opinion is filed in support of the order, and it resolves the question of whether a candidate must report reimbursed campaign expenses as "Income" in Box 10 of his or her Statement of Financial Interests (SFI) filed pursuant to Section 1104 of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. § 1104.[1]

Williams first questions whether the trial court committed an error of law or abuse of discretion in finding that Williams' SFI was defective and in not accepting or allowing an amendment thereto, particularly when there was no allegation of bad faith and the Pennsylvania Supreme Court's holding in *In re Paulmier*, 594 Pa. 433, 937 A.2d 364 (2007), allows amendment where there is no bad faith. His second stated question is whether the trial court erred in holding that the definition of "Income" under Sections 1102 through 1105 of the Ethics Act, 65 Pa.C.S. §§ 1102–1105, included a requirement to report reimbursed campaign expenses as income and in holding that failure to do so was fatal error. Finally, he questions whether the trial court erred in stating that he did not list the receipt of money in excess of $10,000 from his campaign committee as a receipt of expenses.

I

Williams filed his nomination petition on March 10, 2009, and he also filed his SFI pursuant to Section 1104 of the Ethics Act. Section 1105(b)(5) requires the SFI to include: "The name and address of any di-

---

1. The Court's review of a trial court's order as to the validity of a nomination petition is limited to determining whether the findings of fact are supported by substantial evidence in the record and whether there was an error of law or an abuse of discretion. *In re Nomination of Flaherty*, 564 Pa. 671, 770 A.2d 327 (2001).

rect or indirect source of income totaling in the aggregate $1,300 or more. However, this provision shall not be construed to require the divulgence of confidential information protected by statute or existing professional codes of ethics or common law privileges." On March 17, 2009, Objectors filed their petition to set aside the nomination petition of Williams for failure to disclose material information on the SFI. The petition to set aside alleged that candidates are required to disclose various categories of financial information including for example, real estate interests, the names of creditors, gifts and direct sources of income and in ¶8 that failure to disclose such financial information is a "fatal defect" under Section 1104(b)(3), which provides: "Failure to file the statement in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot." Williams listed five direct and indirect sources of income on his SFI, including two law firms, the United States Army Reserves, the City of Philadelphia and Neumann College. He also listed a federal tax refund and noted that there are two pensions that he is not currently entitled to receive.

The petition to set aside alleged that in addition to the income sources disclosed Williams also received substantial income in 2008 from his campaign committee. Specifically, Objectors alleged in ¶13 that Williams received: "$9,762 in unspecified 'reimbursements'; $1,900 in 'petty cash payments'; and $561.38 to American Express as an 'unspecified reimbursement[.]'" They also alleged that he could not provide documentation to show that these were reimbursements related to his campaign and, therefore, that they were direct or indirect sources of income required to be disclosed as income. Objectors asserted that the failure to disclose was a fatal defect that cannot be cured by amendment because the information omitted could not be ascertained from the information disclosed. Hearings were held before the Honorable Allan L. Tereshko, Jr. on March 20 and March 23, 2009.

Objectors acknowledged at the outset of the hearing that they had the burden of proof. They called Williams as on cross-examination in their case in chief. His original SFI was admitted as Challenger Ex. C–1–A, and the Campaign Finance Cycle 7–Year 2008 Report submitted by the campaign committee to the Philadelphia Department of Records was admitted as Exhibit C–2–A. Among the list of payments of "Expenses" in the Campaign Finance Cycle 7 Report, beginning on page 26, were payments to Williams' wife Sonita Williams between April 24 and December 4, 2008 described as Reimbursement and one payment to Williams described as Expense Reimbursement, totaling $10,082.05. Also listed on pages 18 and 19 were entries for Petty Cash or Petty Cash & ATM Fee between May 6 and December 10, 2008, totaling $1916.25.

Williams introduced as Ex. R–1 the Campaign Finance Report, a 17–page report detailing contributions and receipts and detailing expenditures of $10,114.90. After a lunch recess on March 20, 2009, Williams introduced Ex. R–2, an amended SFI proposed to be filed the same day that included as an attachment a statement amending Boxes 1, 9, 10 and 13 of the SFI and a copy of the Campaign Finance Cycle

7 Report; he also introduced R–3, containing copies of receipts for expenses paid for from petty cash. At the continued hearing on March 23, 2009, Williams introduced Ex. R–4, which was a copy of the amended SFI filed on March 20, 2009. Ex. R–4 included as attachments Exhibit A (24-page Statement of Expenditures previously admitted as Ex. C–2–B); Exhibit B (Campaign Finance Report); and Exhibit C (copy of a money order made payable to the campaign committee for $561.38).

Box 10 of the SFI is headed: "**DIRECT OR INDIRECT SOURCES OF INCOME** including (but not limited to) all employment. (See instructions on pg. 2)[.]" Ex. C–1–A. The trial court first addressed the definition of income proffered by Williams, quoting from his March 20, 2009 amended SFI. Williams stated that he did not believe that reimbursements from the campaign count as income under the Ethics Act, which requires reporting of "[a]ny money or thing of value received or to be received as a claim on future services or in recognition of services rendered in the past." Nevertheless, in an abundance of caution, Williams declared that he and his family were reimbursed for campaign expenditures that he made, and he attached supporting documents as noted above.

The trial court then quoted the definition of "income" in Section 1102 of the Ethics Act, *as amended,* 65 Pa.C.S. § 1102 (as quoted in *In re Benninghoff,* 578 Pa. 402, 408 n5, 852 A.2d 1182, 1185 n5 (2004)):

"Income." Any money or thing of value received or to be received as a claim on future services or in recognition of services rendered in the past, whether in the form of a payment, fee, salary, expense, allowance, forbearance, forgiveness, interest, dividend, royalty, rent, capital gain, reward, severance payment, proceeds from the sale of a financial interest in a corporation, professional corporation, partnership or other entity resulting from termination or withdrawal therefrom upon assumption of public office or employment or any other form of recompense or any combination thereof. The term refers to gross income and includes prize winnings and tax-exempt income. The term does not include gifts, governmentally mandated payments or benefits, retirement, pension or annuity payments funded totally by contributions of the public official or employee, or miscellaneous, incidental income of minor dependent children.

The trial court quoted from the Instructions for the SFI, which stated in part: "List the name and address of each source of $1,300 or more of gross income regardless of whether such income is received solely by you or jointly by you and another individual such as a spouse." Ex. C–1–B, p. 2.

The trial court misquoted Section 1102 language by substituting the word **anything** in reference to value received or to be received for the actual word **thing** in reference to value received or to be received. The trial court indicated that the definition of income includes "any money or **anything** of value received or to be received as a claim on future services or in recognition of services performed in the past" and then noted that the definition provides the various forms that money or **anything** of value may take, including such items as interest, dividends, capital gain, allowance, forbearance and most importantly in this case "expense." Trial court opinion at p. 3. The trial court also noted the interpretation in *Paulmier* of the use of "or" in its combination of definitions to derive an interpretation that Section 1105 requires disclosure of "any direct or indirect contribution of income from an individual **or** business." *Paulmier,* 594

Pa. at 448, 937 A.2d at 373. The Supreme Court stated: "In other words, 'or' is disjunctive. It means one or the other of two or more alternatives." *Id.*

The trial court referred also to the reiteration of principles stated in the Statutory Construction Act of 1972 that the best evidence of legislative intent is the words used by the legislature, which are not to be disregarded if they are clear and free from ambiguity, 1 Pa.C.S. § 1921; when construction is necessary the words are to be construed according to the rules of grammar and according to their common and approved usage, 1 Pa.C.S. § 1903(a); and courts may presume that the legislature did not intend a result that is absurd or unreasonable or impossible of execution, 1 Pa.C.S. § 1922(1). The trial court concluded that the meaning of income in Section 1102 of the Ethics Act was broader than that advanced by Williams because the statute includes items such as interest, dividends and capital gains, which do not depend upon or relate to the value of services, past or future.

Next, the trial court considered the Supreme Court's 2004 decision in *Benninghoff,* which involved a challenge to Box 10 of the SFI where a candidate was running for re-election to the General Assembly. For Box 4 he listed his job title as State Representative, for Box 5 (relating to political subdivision as to which candidate holds or is seeking office) he stated that he was an official or employee of his legislative district and for Box 6 he listed his current employment as State Representative. He did not list the source of income from that position in Box 10. This Court concluded that the omission as to Box 10 was a fatal defect appearing on the face of the form. Upon appeal by the candidate, the Supreme Court ruled that he had substantially complied with requirements of the Ethics Act, and the court explained its ruling in part as follows:

> [W]here, as here, all of the information required by Section 1105(b)(5) can be facially obtained from the information provided on the form as a whole, we conclude that it is fully appropriate to permit amendment to the form to duplicate, or triplicate, in Box 10, what is already plainly stated in Boxes 4, 5 and 6.

*Benninghoff,* 578 Pa. at 411, 852 A.2d at 1187. The trial court concluded that this "substantial compliance" standard reflected the Supreme Court's desire to move away from a "per se" rule of fatality reflected in a prior line of its cases.

The trial court considered as well the Supreme Court's 2007 decision in *Paulmier,* where the candidate listed his occupation in Box 6 of the SFI as Housing Specialist and listed his source of income in Box 10 as rental income. The Supreme Court concluded that the Ethics Act and the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600–3591, must be read *in pari materia* and that the "per se" rule of fatality was inconsistent with such a reading because it was based solely on consideration of language in the Ethics Act. The court overruled *In re Anastasio,* 573 Pa. 512, 827 A.2d 373 (2003) (affirming without opinion *In re Nomination Petition of Anastasio,* 820 A.2d 880 (Pa.Cmwlth. 2003)); *In re Braxton,* 583 Pa. 35, 874 A.2d 1143 (2005); and *In re Nomination Petition of Littlepage,* 589 Pa. 455, 909 A.2d 1235 (2006). The court affirmed that its *Benninghoff* rationale was correct.

From this the trial court concluded that where there is an "omission" of a source of income there is no deficiency on the face of the form and it therefore is not amendable. The trial court stated that the analysis was similar to that in *In re Payton,* 945 A.2d

279 (Pa.Cmwlth.), *aff'd*, 596 Pa. 469, 945 A.2d 162 (2008), where the Court sustained challenges to specific nomination papers that lacked any evidence of notarization. The Court noted that in *Nominating of Kloiber*, 26 Pa.Cmwlth. 50, 362 A.2d 484 (1976), it was held that nominating papers with improperly completed affidavits were amendable at the discretion of the Court, but petitions with no affidavits at all left nothing to be amended and so were fatally defective. The trial court determined that Williams failed to report $10,000 received from his campaign as income and that such omission rendered his petition fatally defective.

## II

The Court turns initially to the second issue presented by Williams in his brief, *viz.*, whether the trial court erred in determining that reimbursement of campaign expenses must be reported as income under Section 1102 of the Ethics Act. Williams indicates that the expenses include reimbursement from petty cash for amounts under $25, costs for attending the Democratic National Convention where he conducted campaign activities and reimbursement to his mother's credit card for campaign-related expenses. In his amended SFI Williams attached and incorporated by reference his campaign expense reports. He quotes the definition of income from Section 1102 and asserts that the trial court, in pursuit of its grammatical analysis, lost sight of the overall intent that "expense" included there does not relate to a reimbursement of expenses. Williams suggests that if someone paid a candidate's private expenses without reimbursement that would constitute a "thing of value" within the meaning of Section 1102 and would be treated as income. Otherwise, there would be a loophole in the Ethics Act.

Section 1102 does not address expense reimbursement, but the reality is that many candidates for public office incur various and sundry expenses paid for by cash, credit card or check and then seek reimbursement from the campaign. The regulation at 51 Pa.Code § 17.4, relating to income to be reported on the SFI, does not mention "expense." The regulation at 51 Pa.Code § 17.6, relating to "expense reimbursement," describes reportable expenses as actual expenses for transportation, lodging or hospitality "received in connection with public office or employment[,]" which tracks the language of Section 1105(b)(7) of the Ethics Act. The instructions for Box 12 on the SFI, relating to transportation, lodging and hospitality expenses, state that the candidate must list the source and amount of payment/reimbursement for these expenses "that you received in connection with your public position...." Ex. C–1–B, p. 2. If someone wishing to curry favor with a candidate paid his or her personal expenses without reimbursement that would have a potential for improper and concealed influence. Here, however, a candidate incurred campaign expenses and then was reimbursed by the campaign committee.[2]

**2.** Williams disputes the trial court's grammatical analysis. In *Humphreys v. DeRoss*, 567 Pa. 614, 790 A.2d 281 (2002), Williams argues, the Supreme Court construed a similar definition of "income" in Section 4302 of the Domestic Relations Law, *as amended*, 23 Pa. C.S. § 4302: "Includes compensation for services, *including, but not limited to*, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property" (emphasis added) and numerous other sources. The Supreme Court held that the italicized phrase applied only to "compensation for services" and not to all of the other categories of income enumerated; therefore an item claimed to be income under the definition was required to fit closely into

Objectors respond that Williams' receipt of over $10,000 in alleged expenses from his campaign committee constituted reportable income under the unambiguous definition in the Ethics Act. Echoing the trial court, they contend that in Section 1102 the legislature separated the general categories of income with the disjunctive "or" so that income could mean "any money" or any "thing of value received." Objectors note that a court in construction may be guided by the underlying purpose of an act, *see* 1 Pa.C.S. § 1921(c), and that the underlying purpose of the Ethics Act is full and complete financial disclosure to the electorate. *See* Section 1101.1(a) of the Ethics Act, 65 Pa.C.S. § 1101.1(a). The legislature intended for candidates to disclose monies received in the nature of expenses, even if unrelated to services performed. Also, the electorate has a right to know if a candidate went on a business trip with a special interest lobbyist and received reimbursement for expenses from that lobbyist.[3]

■ Based upon its review of the issues presented, the Court's holding is that campaign expenses paid for initially by a candidate and then reimbursed to the candidate by his or her campaign committee do not fall within the definition of "Income" under Section 1102 of the Ethics Act required to be reported in the SFI under Section 1105(b)(5). Unfortunately, the definition of income in Section 1102 is not so carefully structured and punctuated as the definition in Section 4302 of the Domestic Relations Code at issue in *Humphreys v. DeRoss*, 567 Pa. 614, 790 A.2d 281 (2002), which specified: " 'Income.' Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions, and similar items; income derived from business; gains derived from dealing in property; interest; rents; royalties; dividends...."

The Supreme Court held in *Humphreys* that the definition of income in the Domestic Relations Code clearly distinguished between illustrative forms of compensation for services and other distinct categories of income such as interest, rents and dividends. The Court agrees with Williams, however, that grammatically the opening phrase in Section 1102 of the Ethics Act,

---

an enumerated category. In that case the structure and punctuation of the definition clearly made compensation for services a distinct income category.

3. Even if Williams' receipt of alleged expenses was not income under the Ethics Act, Objectors contend that the evidence showed that he received at least $5289.78 in overpayments from his campaign committee, which were not justified by any documented campaign expense. They maintain that although his receipt of over $10,000 in checks constituted reimbursement for expenses, the statement from his Citizens' Bank Account showed that he paid only $5972.78 from the account, leaving approximately $4,000 of undocumented and unaccounted for payments to Williams. Further, although Williams admitted receiving over $1900 from his campaign for "petty cash," the receipts he relied upon supported only $735 in disbursements. They assert that

this is in violation of Section 1626(c) of the Election Code, added by Section 2 of the Act of October 4, 1978, P.L. 893, 25 P.S. § 3246(c), which requires candidates and committees to retain vouchers for expenses in excess of $25. At oral argument Objectors agreed that if Williams paid $38 for a taxicab fare, as documented in tab 11 of the petition to set aside, and was reimbursed by the campaign committee that would not constitute income for Internal Revenue Service purposes, but they insisted that it would represent income for Ethics Act purposes.

Williams pointed out before the trial court and at oral argument that the total itemized expenditures from Schedule III of the Campaign Finance Report, pp. 7–17 of Ex. R–1, slightly exceed the $10,082.05 made available by the committee. There is no missing $4000.

"[a]ny money or thing of value received as a claim on future services or in recognition of services rendered in the past," appears to apply to the entire following illustrative enumeration of "whether in the form of a payment, fee, salary, expense, allowance, forbearance, forgiveness, interest, dividend, royalty, rent, capital gain . . . or any other form of recompense or any combination thereof." Nonetheless, Objectors are correct that items such as "interest, dividend, royalty, rent [and] capital gain" typically are not associated with rendering services, and as such ambiguity may exist in this regard.

Section 1903(a) of the Statutory Construction Act provides that in general "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage. . . ." Absent a controlling technical definition, the Court quotes the dictionary definition of "expense":

> **2 a :** something that is expended in order to secure a benefit or bring about a result . . . **b :** the financial burden involved typically in a course of action or manner of living: COST . . . **c (1) :** the charges that are incurred by an employee in connection with the performance of his duties and that typically include transportation, meals and lodging while traveling—usu. used in pl. **(2) :** money given to an employee as reimbursement for such charges—usu. used in pl. **d :** an item of outlay incurred in the operation of a business enterprise allocable to and chargeable against revenue for a specific period. . . .

Webster's Third New International Dictionary 800 (2002).[4] *See also* Black's Law Dictionary 687 (rev'd 4th ed. 1968), which defines "expense" to include, *inter alia*, "[t]hat which is expended, laid out or consumed; an outlay; charge; cost; price." Thus the concept of an expense is that of an outlay. Williams testified that all of the payments from his campaign committee to him or to his wife for deposit in their joint bank account were reimbursement for outlays that Williams or his wife or mother (through use of a joint credit card) made on behalf of the campaign. As he noted, many individual expenditures were for amounts of less than $25 for which vouchers did not need to be retained. Section 1626(c) of the Election Code.

In *In re Nominating Petition of Brady*, 923 A.2d 1206 (Pa.Cmwlth.2007), the Court considered a case where a candidate held an unpaid administrative assistant position with his union. The candidate received no wages, but the union made payments to maintain his membership in the union pension fund, which he did not report on Box 10. The Court noted that the instructions for Box 10 at that time were materially different from the definition of income in Section 1102 of the Ethics Code as they did not include the phrase "thing of value received. . . ." Although the Court concluded that the candidate received a "thing of value," it held that he was entitled to rely upon the instructions and that this was not a fatal defect. It observed: "We also note that our Supreme Court has instructed us that due to 'the harsh consequence that would accompany a construction that would lead to a finding of a

---

4. *See 1975 Op. Atty. Gen. No. 75–39*, 74 Pa. D. & C.2d 716 (1975), construing the provision in Section 516.1 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of January 18, 1951, P.L. (1952) 2152, 24 P.S. § 5–516.1, that authorizes payment to school directors of "all expenses actually and necessarily incurred" to attend educational conventions under this and other definitions to conclude that the concept of expense carries the connotation of an enforceable legal obligation to pay.

material non-disclosure, . . .' any ambiguity in the definition should be construed most favorably to candidates seeking ballot access." *Id.* at 1210 n6 (quoting *In re Carroll,* 586 Pa. 624, 638 n10, 896 A.2d 566, 574 n10 (2006)).

■ To the Court it is evident that any ambiguity here must be resolved in the candidate's favor. When a candidate pays campaign-related expenses from his or her own resources, the candidate experiences an outlay, a cost or a charge to accomplish some campaign object. When the candidate receives reimbursement from the campaign, he or she has no net increase in assets; rather, the candidate is returned to his or her original financial state. One feature that all of the other items enumerated under the Section 1102 definition have in common is that they represent an increase in assets through direct payment of wages, receipt of interest, dividends and so forth.

Once again following well-settled principles of statutory construction, the Court finds instructive the definition of "income" in Black's Law Dictionary 906 (rev'd 4th ed. 1968) as "[t]he return in money from one's business, labor, or capital invested; gains, profits, or private revenue. . . . The true increase in amount of wealth which comes to a person during a stated period of time." *See also Delaware County v. First Union Corp.,* 929 A.2d 1258, 1263 n. 14 (Pa.Cmwlth.2007) (quoting a definition of income as "the return in money from one's business, labor, or capital invested: gains, profits, salary wages, etc." from Black's Law Dictionary 687 (5th ed. 1979)). Here, there is no increase in the candidate's wealth attributable to reimbursement of his outlay of expenses, and the Court is unwilling to accept the creative and novel contentions proffered by Objectors and the trial court to the contrary.

■ In the alternative, the Court will consider whether the trial court erred in refusing to allow Williams' amendment to his SFI. Assuming *arguendo* that reimbursement of campaign expenses may in fact be deemed income for purposes of Section 1102 of the Ethics Act, where such information is omitted from an SFI, *Paulmier* would permit a timely amendment so long as the failure to disclose the income was made in good faith. *See Paulmier* n3 (stating that candidates must still file their SFIs in good faith despite the opportunity to amend). Relevant to this issue is the Supreme Court's announcement in *Paulmier*:

When the language of the Ethics Act is tempered by the language of the Election Code, it is clear that the intent of the Legislature is to encourage **both** full financial disclosure and protect voter choice. Read together, the Legislative intent is clearly best served by a rule that allows a timely filer to amend in order to come into full compliance giving the public both the benefit of full financial disclosure and the broadest choice of representatives. Therefore, we now hold that the fatality rule announced in Section 1104 of the Ethics Act was intended by the Legislature to bar only those candidates from the ballot who fail to file statements of financial interests or who file them in an untimely manner. *Section 1104 does not bar any candidate from the ballot if he or she files in a timely manner, even if there are defects on the face of the form, so long as that candidate subsequently amends the form to correct the defect and comes into compliance with the Act in a timely manner.* In other words, all defects related to the content of disclosures on a timely filed statement of financial interest are subject to timely amendment. With this holding this Court specifically overrules our *per curiam* order in *Anas-*

*tasio*, 827 A.2d at 373, as well as its progeny such as *Littlepage*, 909 A.2d at 1235 and *In re Braxton*, 874 A.2d at 1143 . . . . [T]he doctrine of *stare decisis* was never intended to be used as a principle to perpetuate erroneous rules of law.

*Paulmier*, 594 Pa. at 445–446, 937 A.2d at 371 (emphasis added).

█ Objectors made no allegation in their petition to set aside of bad faith on Williams' part in failing to report as income the reimbursement of campaign expenses paid by him, and the trial court made no such finding of bad faith in connection with Williams' failure to report the reimbursements as income. Under the Supreme Court's unequivocal holding in *Paulmier* a candidate who timely files an SFI is not precluded from amending the form in a timely fashion so as to comply with requirements of the Ethics Act. Thus the trial court erred in failing to permit Williams to amend his SFI, assuming of course that reimbursement of campaign expenses is income to be reported in Box 10, which it is not.[5]

Because the trial court committed an error of law and an abuse of its discretion in granting Objectors' petition to set aside Williams' nomination petition, the Court by its per curiam order of April 8, 2009 reversed the trial court's order. By this opinion the Court explains its order and reaffirms that Williams' name shall be placed on the May 2009 ballot as a candidate for Philadelphia District Attorney.

---

5. Williams' third argument is that the trial court erred in stating in its footnote 1 that the amended SFI did not list the receipt of money in excess of $10,000 from his campaign committee as receipt of expenses as required by the Ethics Act. As Williams points out, his amended SFI reported in an abundance of caution reimbursements by the campaign committee of over $10,000 for campaign expenses, as detailed in the attached supporting documents.